F I L E D
United States Court of Appeals
Tenth Circuit

AUG 30 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JOHN M. ARBUCKLE,

          Petitioner-Appellant,

v.

DONALD DORSEY, Warden, Western
N.M. Correctional Facility;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

          Respondents-Appellees.

No. 98-2262
(D.C. No. CIV-97-615-LH)
(D. N.M.)

ORDER AND JUDGMENT *

Before **ANDERSON** and **KELLY** , Circuit Judges, and **BROWN** ,** Senior
District Judge.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     Honorable Wesley E. Brown, Senior District Judge, United States District
Court for the District of Kansas, sitting by designation.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner John Arbuckle appeals the district court's order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. He filed his habeas petition after enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA). A federal magistrate judge recommended the habeas petition be denied, and the recommendation was adopted by the district court. We have granted petitioner's request for issuance of a certificate of appealability under 28 U.S.C. § 2253 and affirm the district court's order denying habeas relief.

BACKGROUND

On April 1, 1994, petitioner and his girlfriend, Lorraine Brown, brought their ten-week old daughter, Lori Ann, to the emergency room of a New Mexico hospital. Doctors determined that Lori Ann had suffered 51 separate bone fractures as well as numerous bruises and other injuries. The infant suffered from a fracture of her neck bone, which was potentially life threatening, as well as multiples fractures of her arms, legs and ribs. The medical evidence showed that the fractures were at different stages of healing and the bruises were of different hues, indicating Lori Ann's injuries had happened at different times. The medical evidence also showed that the injuries could not have happened the way the parents said she was injured, nor could they be the result of an accident because

-2-

of the nature and location of some of her fractures. Numerous doctors testified that the child's injuries were consistent with several episodes of being violently shaken, indicative of child abuse.

The medical evidence showed that the infant's fractures and injuries could not have occurred prior to March 15, 1994, when Lori Ann had been released from the hospital for treatment of a urinary tract infection, at which time x-rays had shown her to have no bone fractures. The evidence also showed that Lori Ann's injuries were inflicted in the 7 to 10 days immediately prior to the day her parents brought her to the emergency room. Petitioner, co-defendant Lorraine Brown, and Lorraine Brown's 16-year old sister had exclusive care and custody of Lori Ann during this period.

Petitioner and Lorraine Brown were tried together and convicted by a New Mexico jury of child abuse resulting in great bodily harm in violation of N.M. Stat. Ann. § 30-6-1. Petitioner was represented at trial by Mr. Aragon. Petitioner was sentenced to eighteen-years' imprisonment, to be followed by two years parole. A state public defender, Monica Munoz, was appointed to represent petitioner on appeal. Petitioner raised numerous evidentiary claims of error. He also raised a claim of ineffective assistance of trial counsel in his direct appeal reply brief. The New Mexico Court of Appeals affirmed petitioner's conviction, striking his ineffective assistance of counsel claims as untimely. Petitioner's

petition for certiorari was denied by the New Mexico Supreme Court. Represented by new counsel, petitioner then filed an application for state post-conviction relief, arguing *iter alia* it was unconstitutional to join his trial with Ms. Brown and claiming he received ineffective assistance of counsel. The petition was denied, and petitioner's petition for certiorari raising these same issues was denied by the New Mexico Supreme Court.

On April 30, 1997, petitioner filed his § 2254 habeas petition, which was denied by the district court. On appeal, petitioner claims he received constitutionally ineffective assistance of counsel at trial when his counsel failed to properly object to the joinder of his trial with that of Ms. Brown and when his trial counsel failed to object on hearsay and Sixth Amendment Confrontation Clause grounds to the admission of out-of-court statements made by his co-defendant. Petitioner also claims he received ineffective assistance of counsel on appeal when his counsel failed to raise his ineffective assistance of trial counsel claims until his direct appeal reply brief.

DISCUSSION

Because petitioner filed his habeas petition after AEDPA's April 24, 1996 effective date, AEDPA governs our review of the instant habeas petition. *See Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999). Accordingly, we may grant habeas relief only if the state court's decision was "contrary to, or

-4-

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). On appeal from the district court's denial of a habeas petition, we review the district court's factual findings for clear error and its legal conclusions de novo. *See Rogers,* 173 F.3d at 1282.

To prevail on a claim of ineffective assistance of trial or appellate counsel, a habeas petitioner must affirmatively show (1) that counsel's performance was deficient or, in other words, "fell below an objective standard of reasonableness," and (2) that counsel's errors prejudiced petitioner, that is to say "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The proper focus is whether counsel's errors "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). If petitioner fails to establish either the performance or prejudice prong of the *Strickland* test, we need not examine his argument further. *Strickland*, 466 U.S. at 697. A claim of ineffective assistance of counsel presents a mixed question of law and fact which

we review de novo. *See Cooks v. Ward*, 165 F.3d 1283, 1292 (10th Cir. 1998), *petition for cert. filed*, (U.S. May 14, 1999) (No. 98-9420).

Failure to Object Properly to Joinder

Under New Mexico law, joinder of defendants is proper when "each of the defendants is charged with accountability for each offense" or the offenses "were part of a common scheme or plan," or "were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of others." Rule 5-203(B)(1) and (3), NMRA (Michie 1999). Ms. Brown's counsel opposed the state's pre-trial motion to join her trial with petitioner's, arguing that the co-defendants had inconsistent defenses and their only possible defense was to point an accusatory finger of blame at the other for Lori Ann's injuries. Petitioner's counsel joined in the motion, stating he joined in the arguments for severance raised by Ms. Brown's counsel. The trial court denied these motions. [1]

---

[1] As noted by the New Mexico Court of Appeals in upholding the joinder, it was not a viable defense for Ms. Brown to blame petitioner for the child's injuries because she would be liable for child abuse if she either caused or *permitted* her child to be placed in a situation that might endanger her life or health. *See* N.M. Stat. Ann. § 30-6-1(C) (emphasis added); *State v. Leal*, 723 P.2d 977, 980 (N.M. Ct. App. 1986). Thus, the New Mexico Court of Appeals held that "neither [petitioner nor Ms. Brown] could defend simply by blaming the other for the actual infliction of the injuries, because permitting the abuse was equally criminal." R. Doc. 7, Ex. L at 3.

Petitioner claims his trial counsel's joinder motion was constitutionally inadequate because he failed to demonstrate to the trial court the prejudice that petitioner would suffer if the trials were joined. Petitioner does not present any additional arguments or evidence that his counsel could have presented to the court in support of his opposition to the joinder motion. Petitioner has failed to demonstrate that his trial counsel's performance in opposing the joinder motion fell below an objective standard of reasonableness, and, thus, that it was constitutionally ineffective.

Petitioner also claims his trial counsel was ineffective because he failed to request a severance during the trial. "[A] criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1360 (1999); *see also United States v. Lane*, 474 U.S. 438, 446 n.8 (1986) ("misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."). "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). The mere fact that "defense theories conflict" or that "one defendant is attempting to cast blame on the other," is insufficient to warrant a severance. *See United States v. Dirden*, 38 F.3d 1131, 1141 (10th Cir. 1994). Rather, to establish prejudice, "[t]he defenses truly must

be mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." *Id.*

Petitioner claims he was prejudiced because Ms. Brown's defense blamed him for abusing both her and Lori Ann. We have reviewed the entire record and are satisfied that Ms. Brown's defense did not attempt to blame petitioner for the child's injuries, nor was her defense mutually exclusive of petitioner's. None of the record citations given by petitioner support his contention that Ms. Brown's defense tended to inculpate him. Ms. Brown's defense was the same as petitioner's: that there was insufficient evidence to establish guilt beyond a reasonable doubt. The jury could have believed the core of Ms. Brown's defense without discounting the core of petitioner's defense. *See id.* Based on our review of the record, we agree with the magistrate judge's conclusion that petitioner has not demonstrated any prejudice flowing from his trial counsel's failure to request a severance during the trial. Therefore, under the standard set out in *Strickland*, 466 U.S. at 693, his claim for ineffective assistance of counsel fails.

Petitioner next claims his trial counsel was ineffective for failing to object on the basis of hearsay and Sixth Amendment Confrontation Clause grounds to the admission of out-of-court statements by Lorraine Brown. He first complains about testimony from a nurse who testified that, while Lori Ann was being treated

for her urinary tract infection, Ms. Brown told her that she and petitioner were short of cash, that they were under a lot of stress, that petitioner did not want to take care of Lori Ann when Ms. Brown returned to work, and that petitioner threatened to remove Lori Ann from the hospital before she was released by the doctors. All of these four statements were recorded in Lori Ann's hospital medical records. Petitioner's counsel objected to this testimony on the basis of relevancy, but did not raise hearsay or Confrontation Clause objections.

A defendant is deprived of his Sixth Amendment right to confrontation when a "powerfully incriminating" out-of-court statement of a nontestifying co-defendant is admitted at their joint trial, even if the jury is instructed to consider the confession only against the nontestifying co-defendant. *See Bruton v. United States*, 391 U.S. 123, 126, 135-37 (1968); *see also Gray v. Maryland*, 118 S. Ct. 1151, 1154 (1998). However, statements that incriminate only inferentially, that is, statements that do not refer directly to the defendant and which become incriminating only when linked with evidence introduced later at trial, are outside the scope of *Bruton*. *See id.* at 1157; *Richardson v. Marsh*, 481 U.S. 200, 208 (1987). The statements here are not facially incriminating and lack the "powerfully incriminating" or "devastating" impact required for a

*Bruton* violation.[2]  Thus, petitioner has not shown his counsel was ineffective for failing to raise Confrontation Clause objections to the admission of these statements.

---

[2]     The magistrate judge   relied upon another well-established exception to *Bruton*:  the admission of out-of-court hearsay statements of an unavailable co-defendant that fall within one or more "firmly rooted" hearsay exceptions does not violate the Confrontation Clause because the statements are presumed to bear adequate indicia of reliability. *See Bourjaily v. United States*, 483 U.S. 171, 182-83 (1987); *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  The district court concluded that because the hearsay statements at issue were all contained within hospital medical records, they fell within a firmly rooted exception to the hearsay rule--the business records exception of Fed. R. Evid. 803(6). *See United States v. Johnson*, 971 F.2d 562, 572-73 (10th Cir. 1992).

This conclusion was in error, however.  Ms. Brown's statements contained in the hospital records are not covered by the business records exception because she was under no duty or compulsion to provide the hospital with accurate information, nor is there evidence that the hospital or the nurse had adequate verification or other assurance of accuracy of the information provided by Ms. Brown. *See United States v. McIntyre*, 997 F.2d 687, 699-700 (10th Cir. 1993).  Business records are admissible despite the prohibition against hearsay if they are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the [record]." Fed. R. Evid. 803(6).  "The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information." *McIntyre*, 997 F.2d at 699 (citing 2 McCormick on Evidence, § 290 at 274 (John William Strong, ed., 4th ed. 1992)).  If, as here, the person supplying the information is not under a duty of accuracy, that is, is not acting in the regular course of business activity, "'an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.'" *Id.* (quoting Fed. R. Evid. 803(6), Advisory Committee Notes on 1972 Proposed Rules).

Assuming that counsel's failure to object to this evidence on hearsay grounds was error, petitioner cannot show that this error was prejudicial. The admission of Ms. Brown's statements that they were low on cash and under stress and that petitioner did not want to take care of Lori Ann all day did not render the proceedings fundamentally unfair or unreliable. Nor was petitioner prejudiced by the testimony that Ms. Brown told the hospital that he was threatening to remove the baby from the hospital because essentially the same testimony was properly admitted as direct evidence. The nurse testified that petitioner actually arrived at the hospital while Ms. Brown was calling in about his threat, and the nurse and a doctor testified about their first hand observations of petitioner's actual attempt to remove the child, including the need to call security to prevent him from doing so.

Petitioner next claims his trial counsel was ineffective for failing to object to certain testimony from Dr. McClintock, the physician who obtained a medical history from Lori Ann's parents when they brought her to the emergency room on April 1, 1994. Dr. McClintock testified that Ms. Brown told him the baby's arms had popped while she was being given a bath that morning, and that the baby's feet had been hurt when Ms. Brown was carrying her in a "snugly" and leaned over to pick something up while shopping. Petitioner's counsel did raise a *Bruton* Confrontation Clause objection to the admission of these out-of-court statements

-11-

by Ms. Brown, which was overruled by the trial court. Petitioner contends his counsel was ineffective for not also raising a hearsay objection. This argument is without merit. Petitioner concedes that Ms. Brown's explanations were plainly inconsistent with the nature and severity of the baby's injuries, and it is clear from the record that the statements were introduced to show that inconsistency. The statements were not introduced to establish the truth of the matter asserted, and thus, were not hearsay. *See* Fed. R. Evid. 801(c). Thus, petitioner's counsel cannot be said to have been ineffective for failing to make a hearsay objection.

Finally, petitioner claims his counsel was ineffective for failing to object to the testimony of an investigator who questioned petitioner and Ms. Brown several hours after Lori Ann's injuries were discovered. The investigator testified about the explanations Ms. Brown gave for the baby's injuries. Petitioner's counsel had earlier noted on the record a continuing objection to the admission of any statements made by Ms. Brown against petitioner, and he objected to this testimony as being cumulative and irrelevant, which was overruled. Petitioner contends his counsel was ineffective for not also raising a hearsay objection to the investigator's testimony about Ms. Brown's statements. Even assuming that counsel's failure to object to this evidence on hearsay grounds was error, an issue we do not address, petitioner cannot show that this error was prejudicial. Another investigator testified about the almost identical explanations petitioner

-12-

gave about Lori Ann's injuries. Thus, the testimony about Ms. Brown's explanations was merely cumulative of other evidence properly admitted against petitioner. *See Strickland*, 466 U.S. at 697 (explaining that we need not determine whether counsel's performance was constitutionally deficient if we determine that petitioner has failed to prove prejudice).

Cumulative Error

Petitioner asserts the accumulation of all his trial counsel's errors entitles him to habeas relief. However, "[c]umulative-error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1266 (1999); *see Newsted v. Gibson*, 158 F.3d 1085, 1097 (10th Cir. 1998) ("A non-error and a non-prejudicial error do not cumulatively amount to prejudicial error."), *cert. denied*, 119 S. Ct. 1509 (1999). Because we found no actual, prejudicial errors, we conclude there was no cumulative error.

Ineffective Assistance of Appellate Counsel

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise properly the issue of ineffective assistance of trial counsel on direct appeal. Appellate counsel will be deemed ineffective if he or she fails to assert a "dead-bang winner," i.e., "an issue which was obvious from the trial record . . . *and* one which would have resulted in a reversal on appeal." *United*

*States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995). Because we have determined that trial counsel's performance was not constitutionally deficient, petitioner's appellate counsel cannot be said to have been ineffective for failing to raise ineffective assistance of counsel claims on direct appeal.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge